## MERRIAM VS. FIELD.

*Contract, construction of. Ambiguity. Accord and satisfaction. Warranty.*

Defendant having, by three several contracts agreed to deliver to plaintiff quantities of lumber, amounting in the aggregate to over a million feet, at specified times in 1858, 1859 and 1860, respectively, in June, 1859 (no lumber having then been delivered), executed and delivered to plaintiff a writing in the following form, viz: "Know all men by these presents, that I, F., in consideration of amount of lumber agreed on, being 750,000 feet, warranted free from any incumbrance and against any adverse claims, and sell and convey to M., having received payment in full for the same." Thereupon, his former agreements were surrendered and cancelled. The lumber referred to in said writing was then in the water at Quincy, Ill., where it could not be inspected. *Held*,

Merriam vs. Field.

1. That there was an *implied warranty* that the lumber was *merchantable*. This question is *res adjudicata*, in this case. *Merriam v. Field*, 24 Wis., 640.

2. That this writing was not only an accord and satisfaction as to the previous executory agreements, but was also a contract for the sale and delivery of lumber, and an action may be maintained upon it as such.

3. It cannot be determined from the face of the contract whether it was for the sale and delivery of 750,000 feet of lumber, absolutely, or of a *specific lot* of lumber, *estimated* by the parties to contain that amount.

4. The ambiguity was open to explanation by evidence of the facts and circumstances attending the making of the agreement.

5. If the contract is for the sale and delivery of 750,000 feet of lumber absolutely, plaintiff in an action upon it may recover for any *shortage*.

6. If it is for the sale and delivery of a specific lot of lumber, the quantity being merely estimated, plaintiff cannot recover for shortage, unless caused by defendant's fraud or by mistake; and the complaint must aver such fraud or mistake.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint states that on the 21st of June, 1859, at Quincy, Illinois, the defendant bargained and sold, and agreed to deliver to the plaintiff, on or about that day, and at that place, 750,000 feet of good merchantable pine lumber, at an agreed price; that the plaintiff then and there paid the defendant for such lumber the agreed price; that the defendant only delivered 625,942 feet of lumber on such contract, leaving a deficiency of 124,058 feet; and that of the quantity so delivered, about 90,000 feet was not good merchantable lumber, but was what is called culls. This action is to recover damages for such alleged breaches of that contract.

The answer contains a general denial of the allegations of the complaint, and a specific denial that the defendant at any time bargained, sold and agreed to deliver to the plaintiffs at Quincy or any other place, 750,000 feet of good merchantable lumber. It then avers that on the 17th day of February, 1857, the defendant executed and delivered to the plaintiff his three several contracts, in and by which, for value received, he promised to pay the plaintiff or bearer 1,000,000 feet of merchantable lum-

ber, to be delivered at Keokuk, on the Mississippi river, in good order, or at such place above Keokuk as the plaintiff might wish, after giving reasonable notice. By the terms of one of said contracts, 300,000 feet of such lumber was to be delivered on or before the first day of June, 1858; by another of them, 300,000 feet was to be delivered on or before the first day of June, 1859; and by the third, the remaining 400,000 feet was to be delivered on or before the first day of June, 1860. It also avers that the defendant never made any other contract, written or verbal, to deliver lumber to the plaintiff, nor ever agreed in any manner to deliver lumber to the plaintiff, other than is specified in these three contracts.

The answer then proceeds as follows : "that on said 21st day of June, 1859, it was agreed by and between the plaintiff and defendant, that the said defendant should then and at that place deliver to the plaintiff seven hundred and fifty thousand feet of pine lumber, to be delivered in the raft, in the Mississippi river at Quincy, Ill., and to be taken at an estimate or calculation of the quantity to be made by the said parties; and that the plaintiff on the delivery to him of said seven hundred and fifty thousand feet of pine lumber according to such estimate, should deliver up to the defendant and cancel the aforesaid contracts, and should discharge the defendant from all liability thereon. That the said plaintiff and the said defendant estimated and agreed upon the number of rafts and pieces of rafts to make up the quantity aforesaid, and the said quantity, to wit, seven hundred and fifty thousand feet so estimated, was delivered by the defendant to the plaintiff at the time and place and in the manner aforesaid, and was by said plaintiff received in full settlement and satisfaction of any and all contracts or agreements of the defendant to deliver lumber to the plaintiff; and the said contracts were cancelled by the plaintiff and given up to the defendant."

It appeared on the trial of the action, that the lumber was delivered to the plaintiff pursuant to the following memoran-

dum of sale: "QUINCY, ILL., June 21st, 1859. Know all men by these presents, that I, *Burgess P. Field*, of Leola in the county of Adams and state of Wisconsin, in consideration of amount of lumber agreed on, being 750,000 feet warranted free from any incumbrance and against any adverse claims, and sell and convey to *D. D. Merriam*, having received payment in full for the same.

"Witness my hand and seal this 21st day of June, A. D. 1859,
"BURGESS P. FIELD."

It also appeared that the consideration for the contract of June 21st, 1859, was the three contracts of 1857, referred to in the answer, which, on the execution of the above memorandum of sale, were cancelled by the plaintiff and surrendered up to the defendant, in payment of the lumber mentioned in the memorandum. No lumber had before that time, been delivered on account of the three contracts of 1857.

Each party introduced a large amount of testimony tending to prove his theory of the case.

All of such testimony necessary to a correct understanding of the points involved in the case and decided by the court, will be found in the opinion.

The circuit judge refused to give the following instruction, which the plaintiff requested him to give the jury: "If the jury find from the evidence that the lumber in question was in the water at Quincy, Illinois, at the time of the execution by defendant of the paper dated June 21st, 1859, and where it could not be inspected, then, under said agreement, the defendant was bound to deliver lumber which was merchantable at Quincy, Illinois, at that time in 1859."

The circuit judge, among other matters, instructed the jury as follows: "But on the other hand, if no such settlement as alleged by defendant was made on the 21st day of June, 1859, and you find that the bill of sale mentioned in the complaint, dated June 21st, 1859, *was an independent transaction* between them for the sale of 750,000 feet absolutely, then the plaintiff

in this action would be entitled to recover for the value of the shortage, less than the 750,000 feet, whatever that may be, and also damages for any deficiency or failure in the quality of the lumber, if any portion of the lumber was not merchantable."

"What I mean to be understood is this, that *if there had been no other transactions* between these parties than appears by the bill of sale, the plaintiff being a retail dealer in lumber and defendant a manufacturer, and he had taken a fleet of lumber down the river, owning it himself, and had given this bill of sale to the plaintiff for value received, then, as the supreme court has decided in this case, there would have been an implied warranty as to the quality of the lumber, because the law presumes that the article mentioned should be a merchantable article."

The defendant had a verdict; and from the judgment in his favor rendered thereon, the plaintiff appeals.

*Finches, Lynde & Miller*, for appellant, contended that, assuming the contract sued on to have been given in settlement of the three prior contracts, the plaintiff had a right to show the representations of the defendant as to the number of courses of lumber in the rafts, and that he guaranteed the same to hold out $750,000 feet, citing 18 Wis., 196; 15 id., 397; 31 Pa. St., 259, 260; 3 E. D. Smith, 307; 24 Barb., 379; 102 Mass., 365; 32 N. Y., 706; 29 Iowa, 160; 32 Md., 197; that, even if the parties examined the rafts, made estimates and agreed upon the quantity, the plaintiff was not thereby estopped from showing that there was a clear mistake, and recovering the deficiency; that evidence of surrounding facts was admissible to show that the word *lumber* was understood to mean and did mean *merchantable* lumber; that, as used in such contract, it did, of itself, imply a warranty of merchantable quality, citing 9 Metc., 83; 2 Pick., 214; 8 Blackf., 89; 6 Taunt., 446; 2 Har. & G., 495; 5 B. & Ald., 240; 3 Rawle, 23; 84 E. C. L., 619; 106 id., 447; and that the paper is in legal effect an agreement, to sell and to deliver 750,000 feet of merchantable lumber, and the

plaintiff is entitled to recover for any shortage or deficiency in quality.

*Mariner, Smith & Ordway,* for respondent, argued that the plaintiff's contract or bill of sale was informal and ambiguous, and was, therefore, subject to parol explanation, citing *Ganson v. Madigan,* 15 Wis., 145; *Lamon v. French,* 25 Wis., 37; that the proof showed that the lumber was estimated, and that no shortage nor any deficiency as to quality had been proven; that this transaction was an accord and satisfaction of the prior contracts, and a delivery and receipt of the lumber then present in full thereof, and not a contract for future delivery; and the question as to its being so was fairly submitted to the jury; that the plaintiff seeking to open such settlement on the ground of fraud or mistake, should have distinctly alleged and proved it, citing *Chubbuck v. Vernam,* 42 N. Y., 434; *Lockwood v. Thorne,* 11 id., 170; 18 id., 285; that it was the duty of the plaintiff, if the lumber received was not merchantable, to return or offer to return it within a reasonable time; and that an accord and satisfaction was clearly made out, citing Parsons on Con., 686–7, and notes; *Brooks v. White.* 2 Metc., 283; *Goodnow v. Smith,* 18 Pick., 414; *Therasson v. Peterson,* 2 Keyes, 636; and the doctrine of implied warranty does not apply to such a case.

LYON, J.   When this action was here on a former occasion, this court held that there was an implied warranty in the contract of June 21st, 1859, that the lumber was of a merchantable quality.   *Merriam v. Field,* 24 Wis., 640.   The testimony in the present bill of exceptions tends to show the same state of facts which was proved on the former trial, and upon which the court placed its decision.   Such testimony tends to show that the lumber in question was in the water at Quincy, Ill., when the paper dated June 21st, 1859, was executed, and where it could not be inspected; and the circuit judge should have instructed the jury that, if those facts were proved to their satisfaction, the defendant was bound to deliver lumber which

was then merchantable at that place. The former decision of this court before mentioned, is *res adjudicata* as to this proposition. The refusal of the learned judge to give such instruction is error. The instruction which was given, and which included as well the alleged deficiency in *quantity* as in the *quality* of the lumber, contains the vital qualification that the contract of June 21st, 1859, must have been *an independent transaction*, in order to entitle the plaintiff to recover for a deficiency either in the quantity or quality of the lumber, in the absence of fraud or mistake. All the other instructions to the jury were in harmony with, and made subject to this qualification.

It is perfectly apparent from the testimony, indeed, it is uncontroverted, that the contract of June 21st, 1859, was not an independent transaction, but that there had been other transactions between the parties which constituted the consideration of that contract, and the instruction was equivalent to a direction to the jury to return a verdict for the defendant.

II. The memorandum or contract of June 21st, 1859, and the consideration paid thereon by the plaintiff, doubtless are a valid accord and satisfaction of the three executory agreements of 1857, mentioned in the answer. But it is something more. It is also a contract of sale and for the delivery of the lumber described in it. This seems too clear to require illustration or argument. We see no force, therefore, in the objection that the plaintiff has mistaken his cause or ground of action.

III. We cannot say that the contract of June 21st, 1859, is a contract for the sale and delivery of 750,000 feet of lumber absolutely; neither can we say that it is a contract for the sale and delivery of a specific lot of lumber estimated by the parties to contain that quantity. The contract in this respect is ambiguous, and the ambiguity is of such a character that it may be explained by other testimony. It is for the jury to decide, from a consideration of all facts and circumstances proved on the trial, what the parties intended by it. If they

intended that the defendant was to deliver 750,000 feet absolutely, the plaintiff must recover damages for any shortage. If they intended that the plaintiff was only to have the defendant's interest in the rafts lying there at Quincy—the quantity being only a matter of mere estimate,—the plaintiff cannot recover for shortage under his present complaint. In the latter case he could only recover for shortage caused by the fraud of the defendant or by mistake, and his complaint should show the grounds of his claim.

IV.    There are many other objections urged to the rulings on the trial, but we apprehend that it is unnecessary to pass upon them specially, as the views herein expressed will doubtless be a sufficient guide to the circuit court, when the action shall be again tried.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.