## MERRIAM VS. FIELD.

*(1) Sale of goods: implied warranty. (2) Error in instructions not cured. (3) Exceptions filed after trial. Act of 1874.*

1. Where lumber is sold without opportunity for examination by the vendee, there is an *implied warranty* that it is merchantable; and where there was evidence tending to show a sale under such circumstances, it was error to instruct the jury, in effect, that the vendee could not recover for any defect in the quality unless they should find that the vendor made representations which would amount to an *express* warranty.

2. Such error was not cured by the fact that there was also evidence tending to show that the vendee took with full knowledge of the quality; it not appearing whether the jury found against him on that ground, or on the ground that there was no express warranty.

3. The bill of exceptions bears date March 9, 1875, and the exceptions to the judge's charge, incorporated therein, appear not to have been filed until March 22d, after a motion on the judge's minutes for a new trial had been denied, but before the close of the term. The record states that when the motion for a new trial was argued, the reporter's minutes of the charge had not been written out, and no copy was in the possession of appellant's attorney. *Held*, that the exceptions were in time to enable this court to review them under sec. 2, ch. 194, Laws of 1874.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleges that on the 21st of June, 1859, at Quincy, in the state of Illinois, the defendant bargained and sold and agreed to deliver to the plaintiff, at the place and on the day above mentioned, 750,000 feet of good merchantable pine lumber, at a certain agreed price; that the plaintiff then and there paid defendant the sum agreed upon for said quantity of lumber; that the defendant did not deliver the agreed quantity, but failed to deliver, and has ever since, on demand, refused to deliver, 124,058 feet thereof; and that of the amount delivered, about 9,000 feet was not good merchantable pine lumber, but was culls. The damages on the culls are laid at $600, and on the shortage at $1,758; and judgment is demanded for the aggregate sum of $2,358, with interest from June 21, 1859, etc.

The answer, after a general denial, alleged that on said 21st of June, 1859, it was agreed between the parties that defendant should deliver to plaintiff 750,000 feet of pine lumber, to be delivered in the raft in the Mississippi river at Quincy, Illinois, and to be taken at an estimate or calculation of the quantity made by the parties; that the parties estimated and agreed upon the number of rafts and pieces of rafts required to make up the quantity aforesaid; and that the 750,000 feet so estimated were delivered by defendant to plaintiff at the time and place and in the manner aforesaid, and were by plaintiff received in full settlement and satisfaction of all agreements between the parties.

A bill of sale executed by the defendant to the plaintiff on occasion of the transaction at Quincy referred to in the pleadings, was put in evidence, and, omitting dates, signatures, and other formal parts, was in these words: "Know all men by these presents, that I, *Burgess P. Field*, .... in consideration of amount of lumber agreed on, being seven hundred and fifty thousand feet, warranted free from any incumbrance and against any adverse claims, and sell and convey to *D. D. Merriam*, having received payment in full for the same."

Decisions of this court on two former appeals in this action will be found reported in 24 Wis., 640–644, and 29 id., 593–599.

The evidence on the second trial was very voluminous, but no part of it need be stated here. Certain portions of the judge's charge to the jury, excepted to by the plaintiff, are sufficiently set forth in the opinion.

Verdict for the defendant. A motion by the plaintiff for a new trial, based on the judge's minutes, on the ground that the verdict was contrary to the law and evidence, was heard on the 8th of March, and was denied. Afterwards, on the 22d of March, plaintiff filed exceptions to the charge and to the denial of certain instructions asked by him; and he appealed from a judgment on the verdict.

*H. M. Finch*, for the appellant, contended, among other things, that the charge of the court was erroneous, 1. Because the word "lumber" in the contract was an express contract that the articles delivered should be merchantable. *Henshaw v. Robins*, 9 Met., 83; *Hastings v. Lovering*, 2 Pick., 214; *Osgood v. Lewis*, 2 Harris & Gill, 495; *R. T. & Man. Co. v. Farquar*, 8 Blackf., 89; *Shepherd v. Kain*, 5 Barn. & Ald., 240; *Bannerman v. White*, 10 C. B., N. S., 844; *Nichol v. Godts*, 10 Exch., 191; *Chanter v. Hopkins*, 4 M. & W., 401; *Josling v. Kingsford*, 106 E. C. L., 447; 3 Rawle, 23. 2. Because the judge entirely misstated the former decision of this court, which was, that, under the contract, if the lumber was in the water where it could not be inspected, that fact of itself made it defendant's duty to deliver merchantable lumber. 3. Because it is now well settled that an express warranty against a specified defect will be valid, although the purchaser had actual knowledge of such defect. *Pinney v. Andrus*, 41 Vt., 631; Smith's L. C., vol. 1, part I, 342.

*D. S. Ordway*, for respondent:

We admitted at the trial that, upon the fact that the lumber at the time of sale was in the water where it could not be inspected, there was an *implied warranty* of its merchantable character, as this court had already decided; but we contended and introduced proof that plaintiff had examined the lumber and knew all about its quality *before its arrival at Quincy*, and agreed to receive and did receive it as it was, without warranty. That was our main ground of defense; the question of fact was fairly submitted to the jury; and if our position was correct in law, the verdict should stand. In proof of its correctness we cite: 2 Story on Con., § 334 and note 1; Benjamin on Sales (1st Am. ed.), 560 and notes; 1 Parsons on Con. (5th ed.), 584, note (*s*); *Wright v. Hart*, 18 Wend., 456; *Gardner v. Gray*, 4 Campb., 144; *Whitefield v. McLeod*, 2 Bay, 380. 2. The exceptions to the charge were made too late. Sec. 2, ch. 194, Laws of 1874, provides that exceptions

to the charge may be taken at any time before the close of the trial term, and may be incorporated in the bill of exceptions, *and reviewed, the same as if made before the jury retires.* This act, obviously unwise and tending to obstruct the course of justice, should not be so construed as to accomplish all the mischief possible; and the clause last recited should not be understood as referring to a review by this court only, but also to a *review by the circuit judge.* Exceptions taken before the jury retires can be reviewed by the circuit judge upon motion for a new trial, and are ordinarily so reviewed. We insist that exceptions taken under this act after verdict must be made before the argument of a motion for a new trial, made upon the minutes of the court, and that the making and arguing of such a motion (as in this case) precludes subsequent exceptions to the charge, being an implied admission that no cause of complaint, as to the charge, exists.

[Counsel on both sides discussed at length other questions raised by the record.]

COLE, J. A number of exceptions were taken on the trial to the rulings of the court admitting or excluding evidence. They will not be noticed, for the reason that we are satisfied that the charge of the court was calculated to prejudice the plaintiff, and that therefore there must be a new trial on that ground.

Among other things the learned circuit judge stated in substance to the jury, that from the bill of sale itself the law would imply a warranty that the lumber should be of a merchantable quality and of the kind set forth in the contract. But he observed that the supreme court had said upon these important questions there should be evidence taken to find out what the parties meant at the time of the sale, and that he left it to the jury to say what was the contract with reference to this matter. In another part of the charge the circuit judge further stated or directed the jury, that if they should

find from the evidence that the defendant did warrant or guaranty the quantity to be 750 M. feet, and did warrant it to be of good, merchantable quality, free from culls, and should also find that there had been an honest measurement of the lumber, and it fell short, then the plaintiff was entitled to recover for the shortage; and that if the quality was not such as represented, the plaintiff was entitled to recover whatever would be a proper deduction for the lumber that was not merchantable; that, on the other hand, if the jury should find there was no such warranty as to quality and as to amount, then the plaintiff could not recover for the shortage; and that it was a question for them to decide upon the evidence, whether there were any such representation as to the quality and quantity, and whether there had been any failure in the quantity or quality.

The natural effect of this charge was, that the defendant was not answerable unless he expressly warranted the lumber to be merchantable. It will be seen that the court submitted the question whether there were any representations made by the defendant in regard to the quality of the lumber, and directed the jury that if they should find that such representations were made, then the plaintiff would be entitled to recover whatever would be a proper reduction for lumber which was not merchantable. It is obvious that under this charge the jury might have found for the defendant on the ground that he made no representations as to quality when he sold the lumber. Indeed, the charge is only susceptible of the construction that, in order to recover for a defect in quality, it was essential for the plaintiff to show that the defendant expressly warranted the lumber to be of a merchantable quality. The liability of the defendant is clearly placed upon that ground.

The circuit court seems to have misapprehended the effect of the decisions of this court heretofore made in the cause. When the case was first here, as reported in 24 Wis., 640, this

court held that as the bill of sale contained an express warranty of title and against incumbrances, with no warranty that the lumber was merchantable, the presumption was that the writing expressed the whole contract as to express warranties; and that the plaintiff could not show that the vendor at the time of sale represented the lumber to be merchantable, without a violation of the salutary rule against varying and adding to written contracts by parol evidence. But this court likewise held that, inasmuch as the testimony tended to show that the lumber, when the bill of sale was executed, was in rafts in the Mississippi river at Quincy, Ill., where it could not be inspected by the vendee, if the sale was made under such circumstances, there was an *implied* warranty that the lumber was merchantable. When the case was here on the second appeal (29 Wis., 592), Mr. Justice LYON properly remarked, in the opinion then given, that this proposition was *res adjudicata* in the cause, and was no longer open for controversy. It seems unnecessary to remark upon the distinction between a warranty of quality which the law implies in case of a sale of lumber situated beyond the reach of the vendee's examination and inspection, and an express warranty of quality made by the vendor. The two things are confounded in the charge, or rather the court ruled that the defendant was not liable unless the jury found that he made representations as to quality which would amount to an express warranty. And consequently there was manifest error in the court's holding, as it did hold, that if the lumber, when the bill of sale was executed, was in the water where it could not be inspected, it was a question for the jury to determine from the evidence, whether there was a warranty of quality.

Nor is it any answer to say that the error became immaterial because it appeared that the plaintiff, knowing what the lumber was, both as to its quality and quantity, took it by agreement as it was, in full satisfaction of the previous contract. It would be improper for us to express an opinion as

to the effect of the evidence upon that question; and we shall refrain from doing so, except to remark that it is very far from being of so satisfactory a character as to render the error in the charge, which we have been commenting on, immaterial or harmless. True, in immediate connection the court told the jury that if they were satisfied from the evidence that the plaintiff had ample opportunity to see the lumber before it was rafted, and knew its quality, had examined it and was able to judge as to quantity and quality, they might find that he purchased the lumber knowing what it was. Assuming, as we may for the argument, but not deciding the point, that there was evidence sufficient to carry that question to the jury, still it is imposssble to tell whether the jury found for the defendant upon that issue or because there was no express warranty of quality established by the evidence.

In regard to the claim for shortage, but an observation need be made. On the second appeal, this court held the contract ambiguous as to quantity. It was there said, whether the bill of sale called for 750 M. feet of lumber absolutely, or whether it was agreed between the parties that the rafts should be delivered and accepted for whatever lumber they contained — no specified quantity being fixed or contracted for, — were questions for the jury to determine from all the facts and circumstances. If the contract was for the sale and delivery of 750 M. feet, and the defendant failed to deliver the entire quantity, he would be bound to make good the shortage.

In this case the exceptions to the charge of the court are incorporated in the bill of exceptions, which bears date March 9, 1875; but the exceptions do not appear to have been filed until March 22d, after a motion for a new trial, made upon the minutes of the judge, had been overruled. The counsel for the defendant insists that the exceptions must be disregarded, because too late. Sec. 2, ch. 194, Laws of 1874, provides that in actions thereafter tried, either party may, at any time before the close of the term of court at which the action

is tried, except to any part of the judge's charge to the jury, and such exceptions may be incorporated into the bill of exceptions and reviewed, the same as if made before the jury retires. There is no pretense that the exceptions in the present case were not filed before the close of the term, and it is stated in the bill of exceptions that at the time of the argument of the motion for a new trial, the reporter's minutes of the charge had not been written out, and no copy was in the possession of the attorney of the plaintiff. But the exceptions were filed in time to enable this court to review them. This is surely so if any effect is given to the above provision. The practice there sanctioned may be most pernicious, as we are inclined to think it is; but it is impossible to say it was beyond the power of the legislature to authorize it.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.