### HARRIS BROTHERS v. SILAS M. WAITE.*
### SAME v. SAME.*

*Parties. Contract of Sale. Implied Warranty of the Fitness of Goods for the Purpose for which they Are Bought.*

Defendant was the sole stockholder and officer of an incorporated gas company. Plaintiffs, who were makers of gas-meters, shipped and billed to said company a lot of meters, which defendant received and used. Several months afterward defendant wrote plaintiffs that he had taken out three of the meters, and that they refused to pass gas. Plaintiffs replied that they could not account for it, unless the valves were stuck by impurities or other cause, but that if defendant would send the meters back they would repair and return them at their own expense, if they were in fault. Defendant thereupon, by personal letter, ordered of plaintiffs another lot of meters, and wrote them that they could draw on him for the amount of the first bill. The plaintiffs in like manner shipped and billed the meters so

---

* Decided at the February Term, 1878.

ordered to said company, and they were received and used by defendant. A long correspondence ensued in regard to the meters and payment therefor, wherein defendant wrote, "I will remit for your bill very soon," and again, that he proposed to settle the account, and would have done so before, but could not fix in his mind what he ought to do, that he thought he was entitled to some allowance for the imperfect working of meters. *Held,* that although it did not appear that defendant ordered the first lot, it was to be presumed from the way in which the parties had treated the claim that he did, and that as he ordered the second lot and had acknowledged his liability to pay for both lots, he was properly made defendant in assumpsit to recover for both lots.

Goods ordered of a manufacturer for a particular purpose, are impliedly warranted fit for that purpose. But the manufacturer is not bound to furnish the best goods of the kind that are or can be made, but only such as are usually made and used—such as are reasonably fit for the purpose. Thus, where it appeared that gas-meters furnished by manufacturers on a general order worked as accurately and well and lasted as long as the meters of other reputable makers, but did not work as accurately and well, nor last as long as the meters of certain English, and perhaps certain other American, makers, it was *held,* that the meters were of the kind and quality required by the order.

THESE cases were in general assumpsit. Pleas, general issue, with notice of special matter, in each case, and trial in each by the court, at the September Term, 1877, Ross, J., presiding.

The plaintiffs, who were manufacturers of gas-meters in Philadelphia, sought to recover of the defendant, who resided in Brattleboro, for two lots of meters that they had sent to the Brattleboro Gas Company. There were two suits, because in the interval between the two shipments a change took place in the plaintiff firm. It appeared that about 1850 the defendant became a stockholder in said gas company, which was a corporation chartered and organized for the purpose of supplying the village of Brattleboro with gas, and that he purchased stock therein from time to time till 1867, when he had purchased the whole of it. After that time he remained the only stockholder and officer of said company. The meters, recovery for which was sought in the first suit, which were manufactured by the plaintiffs in that suit, were shipped on May 22, 1872, and billed to said company at $230, payable in thirty days. They were duly received by the defendant, and used in the business. It did not appear how they were ordered. On October 24, 1872, the defendant, by personal letter of that date, ordered a further lot of meters, and thereupon on November 13, 1872, the meters recovery for which was sought in the

second suit, which were manufactured by the plaintiffs in that suit, were shipped and billed to said company at $349, payable in thirty days. Those meters were also duly received by the defendant and used. The defendant neglected to pay for the meters so received, claiming to the plaintiffs that certain of the meters of the first lot registered gas imperfectly, and that he should be allowed something in reduction of the plaintiffs' account by reason thereof. All communications between the plaintiffs and the defendant in respect to the meters were by letter. On October 9, 1872, the defendant wrote the plaintiffs that he had that day taken out three of their meters, and that they refused to pass gas. The plaintiffs replied, that they could not account for it unless the valves were stuck by impurities or other cause, but that if the defendant would send the meters back, they would repair and return them at their own expense, if they were in fault for their not working. In the letter in which the second lot of meters was ordered the defendant said, "You can draw on me for the bill of $230." In April and May, 1873, the plaintiffs wrote the defendant several times, requesting payment of the two bills. On June 10 the defendant replied, "I will remit for your bill very soon." In August the plaintiffs wrote the defendant twice asking payment, and drew on him for the amount of their bills, but the draft was returned unpaid. On September 8, the defendant wrote in reply that he proposed to settle the account, and would have done so before then, but could not fix in his mind what he ought to do, that he thought he was entitled to some allowance for the imperfect working of meters. Further correspondence was had in which the plaintiffs asked for a statement of defendant's claim, urged payment, and threatened suit, and defendant promised to send such statement, and asked that a competent man be sent to examine the meters. The defendant never returned any of the meters, nor furnished the plaintiffs with any specification of his claim. The defendant claimed on trial that many of the meters registered gas imperfectly, and ceased to register altogether much sooner than they ought to have done, but he made no claim that they were expressly warranted. The defendant offered, and was allowed, *pro forma*, to introduce evidence, to the admission of which the

plaintiffs objected and excepted, to show that he lost, or failed to collect from his customers, large sums of money by reason of the failure of the meters to register perfectly. From that evidence the court found that the defendant did suffer losses to an amount equal to the sum due on the plaintiffs' bills, but the court was not satisfied that the defendant would have suffered to that extent or to the amount of more than $200 if he had managed the business and used the meters prudently ; that the meters worked as accurately and well, and lasted as long, as the meters of other reputable makers, but that they did not work as accurately and well nor last as long as the meters of certain English, and perhaps certain other American, makers ; and that, if in such sales the plaintiffs impliedly warranted said meters to register gas accurately, and to continue to do so as long as the best meters, then said meters were not worth more than half the price charged for them, without considering the loss sustained by the defendant by his failure to collect for all the gas consumed.

The defendant insisted that as the meters were billed to the gas company the plaintiffs could not recover therefor in suits against him. But the court rendered judgment in each case for the plaintiffs for the amount of the bill therein sought to be recovered, with interest after thirty days, and costs ; to which the defendant excepted.

*Field & Tyler* and *E. J. Phelps,* for the defendant.

There was an implied warranty that the meters would register gas accurately. When one undertakes to supply an article for any particular purpose, he warrants it fit and proper for such purpose. Story Sales, 389 ; *Beals* v. *Olmstead,* 24 Vt. 114 ; PIERPOINT, C. J., in *Pease* v. *Sabin,* 38 Vt. 435. If goods delivered by a vendor do not correspond to his agreement, but are retained by the vendee, the vendor can recover in an action for goods sold and delivered, only the actual worth of the goods at the time and place of delivery, although a price was fixed by contract. Story Sales, 439 ; *Brown* v. *Sayles,* 27 Vt. 227. Thus, under the finding of the court the plaintiffs can recover only half the amount of

the two bills. *Okell* v. *Smith*, 1 Stark. 86 ; *Westcott* v. *Nims*, 4 Cush. 215.

The defendant claimed and the court found that actual damage had occurred to the defendant through the defects in the meters to the amount of their value, but that all damages above $200 might have been avoided by greater vigilance. The evidence from which that was found was properly admitted. In such cases damages may be recovered for direct injuries and losses and for the immediate gain of which the party has been deprived. *Keyes* v. *Western Vermont Slate Company*, 34 Vt. 81. It is clear, then, on the finding of the court, that the plaintiffs can recover one half the amount of their bills, less $200. Story. Sales, 454, and notes.

It will be insisted that the defendant is bound to pay the full price because he did not return the goods on discovery of the defects. But such has not been the law of this State since the decision in *West* v. *Cutting*, 19 Vt. 536. See Sedgwick Dam. 287 ; *Matteson* v. *Holt*, 45 Vt. 336, 341. The defendant's letter promising to remit the amount of the plaintiff's bills created no greater obligation to pay than before existed. It did not change the relation of the parties. Had it been a promissory note, it would be subject to the defence we make—a partial failure of consideration.

The actions cannot be sustained against the defendant. They should have been brought against the Brattleboro Gas Company. The company was not dissolved. Angell & Ames Corp. 659 ; *Boston Glass Manufactory* v. *Langdon*, 24 Pick. 49.

*Davenport & Eddy*, for the plaintiffs.

It is of no importance to whom the goods were billed, save as that circumstance has weight on the question, Who bought the goods, and to whom was credit given ? But defendant promised to pay. The County Court, to render the judgment it did, must have found the facts needful to sustain that judgment. The evidence certainly *tended* to show these facts. The County Court's finding of facts, like that of a jury, cannot be revised where there is any evidence to support the finding.

Defendant is not excused from payment on the ground that the meters were defective. There was no express warranty. There is nothing that shows any fault or defect in the construction or operation of the meters. The case shows that the meters worked as accurately and well, and lasted as long, as the meters of other reputable makers. That is all the law requires. The County Court decided that if the plaintiffs impliedly warranted the meters to register accurately and to continue to do so as long as the best meters, then the meters were not worth more than half price. Assuming that the evidence from which the court so found was properly admitted, there can be no implied warranty to that extent. When defendant ordered the meters and the plaintiffs filled the order, if any warranty was implied it was that the meters were meters of the plaintiffs' manufacture, and reasonably fit for use as meters. 1 Parsons Cont. 469, note *v;* Chitty Cont. 450, 451; *Beals* v. *Olmstead*, 24 Vt. 114. But whether any warranty arose by implication is at least doubtful. Chitty Cont. 451.

But if there was any warranty defendant has so conducted himself that he is precluded from setting it up as an excuse for non-payment. He waived his right to object to the quality of the meters by putting them to use, by not returning them, and by promising to pay. The rule in this respect is different in cases of implied warranty from what it is in cases of express warranty. 1 Parsons Cont. 475; Chitty Cont. 461; *Grimaldi* v. *White*, 4 Esp. 95; *Hopkins* v. *Appleby*, 1 Stark. 388; *Fisher* v. *Samuda*, 1 Camp. 190; *Boughton* v. *Standish*, 48 Vt. 594; and cases *passim.*

The opinion of the court was delivered by

ROYCE, J. It appeared that the defendant since the year 1867 had been the sole owner of the stock of the Brattleboro Gas Co., and, although the court did not find that the meters furnished in May, 1872, and which are the subject-matter of claim in the first suit, were ordered by the defendant individually, it is to be presumed from the manner in which the claim has been treated by the parties in their correspondence that they were so ordered, and he has expressly acknowledged his liability to pay for them.

Harris Brothers *v.* Waite.

The meters for which a recovery is sought in the second suit were ordered by the defendant, and he has since the receipt of them acknowledged his individual liability to pay for them. So that we think the suits were properly brought against the defendant. The defence made is, that the meters were faulty in their construction. It is not claimed that there was an express warranty of them, but it is claimed that there was an implied warranty against the defects complained of. Where goods are ordered from a manufacturer for a particular purpose, there is an implied warranty that they shall be fit for the purpose for which they are ordered. But the manufacturer, under a general order, is not bound to furnish the best goods of the kind ordered that can be, or are, manufactured. He is only required to furnish goods of the kind and quality usually manufactured and used, and such as are reasonably fit and proper for the purpose for which they are ordered. From the facts found by the County Court, the meters furnished by the plaintiffs answered those requirements. And without considering the legal effect upon the rights of the parties of the retention and use of the meters by the defendant, and of his neglect to return them to the plaintiffs for repairment when requested, he is liable upon the ground that the meters furnished were of the kind and quality required by the orders.

*Judgment affirmed in each case.*