JOSEPH R. WARNER *vs.* THE ARCTIC ICE COMPANY.

Sagadahoc.   Opinion February 23, 1883.

*Contract.   Sales.   " Fairly merchantable."   Ice.*

In an action for failure to deliver ice of the quality called for in a contract to deliver a certain number of tons " of ice," it is correct to instruct the jury : " Where a purchaser has no sufficient and reasonable opportunity to inspect the goods, before or at the time of the sale, and there are no circumstances, such as the smallness of price for example, to negative the presumption that goods of merchantable quality of the kind bargained for were meant to be bought, the purchaser has a right to expect a salable article of the description mentioned in the contract between them.   And while the purchaser without special warranty cannot insist that the article should be of any, especially, particularly, good, quality, there would be an implied warranty on the part of the seller that it is of fairly merchantable quality."

At the trial the presiding justice, without objection being made, submitted this question for special finding to the jury :   " Was or was not the ice on

board these vessels, fair, merchantable ice for the market for which both the parties knew it was intended, when it was put on board at Woolwich?" and the jury answered, "It was." Exceptions being taken to the submission of this inquiry; *Held*, No error.

The received definitions of the word "fair," show that it is well adapted to convey the idea of mediocrity in quality, or something just above that.

ON EXCEPTIONS.

Assumpsit for failure to deliver ice called for by the following and one other similar contract :

> "James B. Drake,
> "Ship and Insurance Broker,
> "Granite Block, Front Street,
> > "Bath, Me., Jan. 22, 1880.

"Sold to J. R. Warner, three thousand tons of ice, more or less, enough to load two ships, at $1.50 per ton, f. o. b. packed suitably for shipment to New Orleans. Said ice to be taken on or before November first, eighteen hundred and eighty.

> Frank O. Moses, Treasurer Arctic Ice Co."

"Accepted as above.

> J. R. Warner, by J. B. Drake."

"In consideration of five per cent. commission, I agree to pay for the above ice within thirty days from date of shipment.

> Jas. B. Drake."

"Bath, May 10, 1880. It is agreed by the parties hereto, that 3200 tons fills this contract complete.

> Frank O. Moses, Treasurer.
> J. B. Drake."

The plea was general issue.

At the trial the presiding justice submitted the question recited in the head note for special finding of the jury, without objection from either party.

Other material facts are stated in the opinion.

*W. Gilbert*, for the plaintiff.

The question submitted to the jury was erroneous for two reasons : (1.) It assumes that both parties knew that the ice contracted for was intended for a certain market. It does

not follow because it was to be packed suitably for a voyage to New Orleans that both parties knew it was intended for that market. The fact assumed should have been submitted to the jury. It amounted to an expression of an opinion by the court. (2.) The qualification of merchantable ice by the use of the word "fair" or as expressed in the instructions by the word "fairly."

The counsel contended in an able argument that the use of those words was calculated to lower the obligations of the defendants, and cited: Kent's Com. 479, note a, — original ed. citing: *Howard* v. *Hoey*, 23 Wend. 350; *Moses* v. *Mead*, 1 Denio, 378.

*C. W. Larrabee*, for the defendants.

SYMONDS, J.   In the trial of the present case, the court was dealing with what at its date was an executory contract for the delivery of ice at a future time; and with the question whether the defendants had broken the contract by a failure to deliver ice of the quality and in the condition required. The few sentences from the charge which are contained in the bill of exceptions show the following ruling to have been given.   "Where the purchaser has no sufficient and reasonable opportunity to inspect the goods before or at the time of the sale, and there are no circumstances, such as the smallness of price for example, to negative the presumption that goods of a merchantable quality of the kind bargained for were meant to be bought, the purchaser has a right to expect a salable article of the kind mentioned in the contract; and while the purchaser without special warranty cannot insist that the article shall be of any especially, particularly, good quality, there would be an implied warranty on the part of the seller that it is of fairly merchantable quality."

No claim appearing to have been made that the price was inadequate, or that other circumstances existed to negative the presumption to which the court referred, that qualification of the ruling need not be considered.   In all respects to which the exceptions relate, the instruction is fully sustained by authority.

"In every contract to supply goods of a specified description, which the buyer has no opportunity to inspect, the goods must not only answer the specific description, but must also be salable or marketable under that description. In the words of Lord ELLENBOROUGH, in *Gardiner* v. *Gray*, 4 Camp. 143, without any particular warranty this is an implied term in every such contract." *Jones* v. *Just*, L. R. 3 Q. B. 197, 205; *Morley* v. *Greyson*, L. R. 4 Ex. 49, 52; *Harris* v. *Waite*, 51 Vt. 480; *Merriam* v. *Field*, 39 Wis. 578; *Hastings* v. *Lovering*, 2 Pick. 220; *Swett* v. *Shumway*, 102 Mass. 365.

"The fundamental undertaking is, that the article offered or delivered shall answer the description of it contained in the contract. That rule comprises all the others; they are adaptations of it to particular kinds of contracts of purchase and sale. You must, therefore, first determine from the words used, or the circumstances, what in or according to the contract is the real mercantile or business description of the thing which is the subject matter of the bargain of purchase and sale, or, in other words, the contract. If that subject matter be merely the commercial article or commodity, the undertaking is that the thing offered or delivered shall answer that description, that is to say, shall be that article or commodity, salable or merchantable." *Randall* v. *Nenson*, 2 Q. B. Div. 102.

The principal objection urged in argument by the plaintiff relates not to the general principle stated to the jury and supported by the authorities cited, but to the use of the words, fair and fairly, in the charge and in the special finding, to modify the term merchantable. It is said that thereby the force of that term was reduced, when the plaintiff was entitled to the full effect of it. That there may be and are different grades of merchantable ice, as of other merchandise, is not denied. One quality may be purer and finer than another, and both be merchantable. Clearly under the authorities an executory contract for the delivery of ice to the plaintiff did not necessarily entitle him to the first quality. Various terms are used in the cases cited to define the word merchantable in the sense in which it is to be applied in such cases, "ordinary quality," "marketable quality,

bringing the average price," "at least of medium quality or goodness," "good, lawful merchandize of suitable quality," "good and sufficient in its kind," "free from any remarkable defect."

Of a manufacturer, it is said in *Harris* v. *Waite, supra,* "Under a general order, he is not bound to furnish the best goods of the kind ordered that can be or are manufactured. He is only required to furnish goods of the kind and quality usually manufactured and used, and such as are reasonably fit and proper for the purpose for which they are ordered."

The received definitions of the word fair show that it is well adapted to convey this idea of mediocrity in quality, or something just above that. In *Swett* v. *Shumway, supra,* an action on a written contract for the manufacture and delivery of horn chains, the instruction was that "there being no stipulation in the contract that the horn chains were to be of the first quality, the law does not imply a warranty that they should be of the first quality, but does imply a warranty that they should be of fair merchantable quality and of good workmanship;" and this ruling was approved as sufficiently favorable to the defendant, who was there, as the plaintiff is here, the party to receive delivery of the goods under the contract.

The rules of law applicable to other classes of cases, to the giving of which to the jury exception is taken, were correct in themselves and the cases to which they applied were correctly defined. It need not be said that to state other cases than that on trial and to illustrate the application of rules of law to them, is not in itself an error. To state the law of analogous or contrasted cases may be the readiest method of distinguishing and explaining its application to the case on trial. Where exceptions contain only a brief summary of the case, and but a small part of the charge, it is not strange if the direct bearing of some of the rulings fails to appear. But exceptions can be sustained only when they show an error, and one by which the excepting party has been aggrieved.

Exceptions to the form of a special finding submitted to the jury are not tenable, unless the rulings in connection with it

appear in such a manner as to show that an error was committed. At least the case disclosed by the exceptions does not show that the form used in the present instance affected injuriously the rights of either party. The objection to the use of the word fair in the special finding has been already considered. What was said by the court in regard to the market for which this ice was intended, or the effect of the clause in the memorandum in regard to its being packed suitably for shipment to New Orleans, does not appear.

*Exceptions overruled.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.