JAMES MURCHIE & others *vs.* PARDON CORNELL & another.

Bristol.    October 28, 1891. — November 25, 1891.

Present : ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Sale — Implied Warranty of Quality — Evidence.*

A commercial contract for the sale and delivery of a cargo of ice, which the
purchaser has no opportunity to inspect, calls for a merchantable article of
that name.

At the trial of an action to recover for a cargo of ice sold by the plaintiff to the
defendant, the plaintiff put in evidence tending to show that the defendant never
notified him of any defect in the quality or condition of the ice until after the
action was brought; and to meet this the defendant offered a notarial protest
signed and sworn to by him the day the ice arrived. *Held,* that the protest was
properly excluded.

CONTRACT, for a cargo of ice sold by the plaintiffs to the
defendants.

At the trial in the Superior Court, before *Dunbar,* J., there
was evidence that Pardon Cornell, as representing a firm com-
posed of the other defendant and himself which dealt in ice,
went to Calais, Maine, and had several conversations with Wil-
liam A. Murchie, one of the plaintiffs, who formed a firm also
dealing in ice, in relation to the purchase of a cargo of ice.

The plaintiffs' evidence tended to show that the ice which the
plaintiffs were proposing to sell to the defendants was in Pem-
broke, a town upon the coast of Maine, about eighteen miles dis-
tant from Calais, with which the only communication was by
stage-coach; that Murchie suggested to Cornell that he should
go to Pembroke and see the ice; that at the time of the first
conversation between them in regard to ice the plaintiffs did
not own the ice, but proposed to buy it and ship it to the defend-
ants, but before the negotiations were completed they had pur-
chased the ice; that there was no express warranty of the ice;
and that the ice on its arrival was sound and merchantable.

The defendants' evidence tended to show that Murchie pro-
posed to Cornell to sell him a cargo of ice to be shipped from
Pembroke; that the negotiations were not completed at Calais,
and Cornell left there for Bangor and New Bedford; that the

contract for the purchase of the ice was completed by telegrams which passed between Calais and Bangor, and finally between Calais and New Bedford; that by the terms of the contract the plaintiffs were to ship a cargo of ice, of three hundred and sixty tons, from Pembroke, Maine, by vessel to New Bedford, at a certain price per ton; and that the ice on its arrival was unsound and unmerchantable.

The plaintiffs introduced evidence tending to show that the first complaint they had from the defendants as to the quality or condition of the ice, was a telegram from Cornell: " Schooner arrived, — shortage needs adjusting, — come at once "; and that the defendants never notified them of any fault with the ice excepting as to the quantity until after the bringing of this action, and no complaint was made by the defendants to them as to the quality or condition of the ice. The defendants, having introduced evidence tending to show that Cornell went to the office of a notary public the day the discharging of the ice was completed, and there signed and made oath to a statement in writing, which was duly recorded by the notary in his book of protests, thereupon offered this written statement for the purpose of rebutting any claim on the part of the plaintiffs that the defendants had no fault to find with the quality and condition of the ice prior to the bringing of the action, and of rebutting any argument which might be made therefrom that there was no fault to be found with the quality or the condition of the ice, and not as evidence of the contents of such written instrument. The judge excluded the evidence offered, and the defendants excepted.

The defendants asked the judge to rule as follows: " In a contract for the sale of ice at wholesale by a dealer in the article to one to be sold again, where there is no opportunity for inspection of the ice, and no express warranty is made, there is an implied warranty that the ice sold is merchantable and salable as ice for ordinary retail use."

The judge declined to give the ruling asked for, but instructed the jury in relation thereto as follows: " There is no implied warranty of the quality of goods, — by implied warranty I mean a warranty which arises out of the sale itself, nothing being said as to quality, — unless the kind or species of article is such that

an affirmation is necessarily implied in the making of the sale of that article, that it is of a particular quality. In ordinary sales, in the sales of ordinary articles, such an implied warranty does not arise; and speaking strictly of quality in this case, there is no implied warranty. What is quality and what is condition in the case of ice is a matter perhaps very difficult to determine, when there is no question of the purity of the water contained in the ice. If we had here before us a question of the purity of the water of which the ice had been frozen, you might say without any qualification it was a question of quality. Here the quality relied upon depends largely upon the condition of the ice. As it is a matter of common knowledge that ice is cut in cakes, and that it is sold and handled and delivered in cakes, at wholesale at least, and as by this contract all parties contemplated the ice was to be shipped on board a schooner and sent by sea to New Bedford, there to be discharged and stacked or housed, there must be an implied affirmation that the ice was of such a kind that it could be so shipped, transported, and discharged; that is as far as there can be an implied warranty in this case, if that can be said to be an implied warranty."

The jury returned a verdict for the plaintiffs; and the defendants alleged exceptions.

*H. M. Knowlton*, for the defendants.

*W. Clifford*, for the plaintiffs.

HOLMES, J. 1. The plaintiffs agreed to sell, and the defendants agreed to buy, a cargo of ice of three hundred and sixty tons, to be shipped from Pembroke, Maine. From some of the evidence it would seem that the ice was not identified by the contract, but was to be supplied and appropriated to the contract by the plaintiffs, the sellers. From other parts of the testimony it might be inferred that the ice was identified by the contract, but at a time and under circumstances when the defendants had no opportunity to inspect it before shipment. The judge instructed the jury generally that there was an implied affirmation that the ice was of such a kind that it could be shipped, transported by sea, and discharged at New Bedford, as contemplated by the contract, and no other implied affirmation or warranty. If the instruction is wrong in either view which the jury might have taken of the facts, the exceptions must be sustained, and

it is unnecessary to consider whether the implication would be more extensive in the former case than in the latter.

In some contracts of the latter kind, when the sale is of specific goods, but the buyer has no chance to inspect them, the name given to the goods in the contract, taken in its commercial sense, may describe all that the purchaser is entitled to demand. So it was held with regard to " Manila sugar," in *Gossler* v. *Eagle Sugar Refinery*, 103 Mass. 331.

But in many cases like the present, the inference is warranted that the thing to be furnished must be not only a thing of the name mentioned in the contract, but something more. How much more may depend upon circumstances, and at times the whole question may be for the jury. If a very vague generic word is used, like " ice," which taken literally may be satisfied by a worthless article, and the contract is a commercial contract, the court properly may instruct the jury that the word means more than its bare definition in the dictionary, and calls for a merchantable article of that name. If that is not furnished, the contract is not performed. *Warner* v. *Arctic Ice Co.* 74 Maine, 475. *Swett* v. *Shumway*, 102 Mass. 365, 369. *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52, 58.

In a sale of " Manilla hemp," like that of the sugar in *Gossler* v. *Eagle Sugar Refinery*, it was held in England that the hemp must be merchantable. *Jones* v. *Just*, L. R. 3 Q. B. 197. *Gardiner* v. *Gray*, 4 Camp. 144. *Howard* v. *Hoey*, 23 Wend. 350, 351. *Merriam* v. *Field*, 39 Wis. 578. *Fish* v. *Roseberry*, 22 Ill. 288, 299. *Babcock* v. *Trice*, 18 Ill. 420. See *Hight* v. *Bacon*, 126 Mass. 10, 12 ; *Hastings* v. *Lovering*, 2 Pick. 214, 220.

2. The plaintiffs put in evidence tending to show that the defendants never notified them of any defect in the quality or condition of the ice until after this suit. To meet this the defendants offered a protest signed and sworn to by one of them on the day the ice arrived. This protest was no evidence that the statements contained in it were true, or that the defendants' story was not false. So far as the plaintiffs' evidence was introduced for the purpose of showing such an acceptance of the ice as to bar the defendants from alleging that it did not satisfy the contract, (*Morse* v. *Moore*, 83 Maine, 473, and *Gaylord Manuf. Co.* v. *Allen*, 53 N. Y. 515, 519,) the protest of course had no

bearing. And although it did show that the defendant's story was not an afterthought, it was properly excluded, the plaintiffs, so far as appears, not having taken that specific point. *Wallace* v. *Story,* 139 Mass. 115.        *Exceptions sustained.*