GAGE v. CARPENTER et al.

(Circuit Court of Appeals, First Circuit. March 22, 1901.)

No. 356.

1. SALE—CONSTRUCTION OF CONTRACT.

A sale of all the ice in certain ice houses, for a price based upon the quantity shown by an agreed survey made before the contract was reduced to writing, is a sale in bulk, and not of the quantity shown by the survey.

2. SAME—IMPLIED WARRANTY OF QUALITY.

An implied warranty by a seller of an article which is in existence, as to quality or against defects which are not obvious, arises only where the circumstances are such as entitle the buyer to rely upon the knowledge or opportunity of inspection which the seller possesses and he does not possess.

3. SAME—CONTRACT CONSTRUED.

Defendant sold to plaintiff in bulk all the ice stored in certain ice houses, with the understanding that plaintiff purchased it to resell in the general course of the ice business in a city. Defendant did not put up the ice, but bought it after it was stored, and had never seen it, and so stated to plaintiff, also telling him from whom he purchased it, and that he had no other information as to its condition or quality than the statements of such seller. Held, that under such circumstances there was no implied warranty by defendant that the ice was all of merchantable quality.

In Error to the Circuit Court of the United States for the District of Massachusetts.

John C. Burke and James F. Corbett, for plaintiff in error.

Robert Cushman (Odin B. Roberts, on brief), for defendants in error.

Before COLT, Circuit Judge, and ALDRICH and LOWELL, District Judges.

ALDRICH, District Judge. The controversy here relates to a sale of ice. According to the plaintiff's principal contention in argument before us, and according to the construction most favorable to him which we deem admissible, it was a sale of all the ice in five certain ice houses in Chelmsford. It was undisputed that the weight of the ice was determined at 5,748.70 tons, by an agreed survey made before the contract was reduced to writing, and the price was fixed at $5,748.70, being at the rate of one dollar per ton, calculated on the basis of the survey. For the price fixed, therefore, $5,748.70, the plaintiff became the owner by purchase of all the ice in the ice houses, whether it was more or less than the survey. If the learned trial judge is to be taken as having permitted the jury, under the aid of parol evidence, to construe the contract as a sale of 5,748.70 tons of ice at one dollar per ton, we think he erroneously admitted parol evidence to vary the written agreement. We have to determine, therefore, whether, in a lump sale of specified ice under the circumstances mentioned, there arose an implied warranty that the ice was of merchantable quality, and we need only consider the exceptions which raise that question, for the reason that the plaintiff's right of recovery, if any, results from a warranty of that character; and, as we hold there is no implied warranty, all other questions become immaterial.

The evidence of the plaintiff below tended to show that a part of the ice in question turned out, as it was opened up, to be snow ice, and therefore unmerchantable, and the plaintiff claimed an implied warranty that the same was merchantable. As has been said, the quantity of ice had been ascertained by survey at the time the contract was reduced to writing and the ice paid for; and therefore the claim of warranty, we think, relates to the quality of the mass, rather than to the question whether the mass was in part ice and in part snow. We do not, as argued here by the defendant in error, view the situation shown by the record as presenting a case where the commodity turned out to be not the thing named in the contract. True, as claimed by the defendant in error, the sale was of ice, not snow; but snow ice, in the common acceptation of the term, is not snow. Snow ice results when the snow melts, and the snow water, or slush, held upon the surface of the river or pond ice, is frozen, thus forming an upper layer, or course, of ice of an inferior consistency, weight, and quality. Consequently it was all ice, and the controversy, therefore, reasonably enough we think, relates to the quality of the ice sold rather than to a question whether the vendor sold for ice a commodity which was not in fact ice, and delivered a thing not named in the contract.

It is somewhat difficult to reconcile the implied warranty cases, and state a general rule, with all the limitations and distinctions

given in the books, and it is not necessary that we should attempt to do so. It is sufficient for the purposes of this case to determine whether an implied warranty was created by the written contract, construed in the light of the situation of the property and the relations of the parties thereto as shown by the material parol evidence; and it may be observed at the outset that the learned judge who presided at the trial treated the question as one of doubt, upon which he inclined to the view of the plaintiff below.

The property in controversy was in esse and in bulk, as ice is usually packed in large storehouses in large quantities, and consisted, as expressed in the written contract, "of all the ice stored in my five ice houses on the shore of Baptist or Hart's pond in South Chelmsford." The buyer met the seller at South Chelmsford, and looked over the property in the situation described before the contract of sale was completed, and it was bought, as the seller understood, to be sold again in the usual course of a general ice business in Providence. The ice was not harvested, packed, or stored by the seller, and at time of sale was so situated that it could not be inspected. For this reason the seller had had no opportunity of inspecting or determining the quality or condition of the ice beyond that of the buyer, and the buyer was informed that the seller had purchased it of the Lowell Ice Company, that he had never made any personal examination as to the quality or condition, and that all the information he had about it was derived from the persons of whom he purchased.

We do not think the law implies a warranty of quality under such circumstances. It does not stand like a case where the seller was silent as to his information or lack of information. It was equivalent to saying to the buyer: "You have all the information and all the opportunities for information that I have. You take your chances as to quality if you buy the property, which cannot be inspected, with notice that I have not inspected it, and have no knowledge and no opportunities of gaining knowledge as to its quality. You take your chances under the same conditions upon which I took my chances in buying." It does not stand like goods sold upon sample, where the goods must conform to the pattern, or like machinery, to be manufactured for a certain purpose, or like goods in existence sold at the market price for a given purpose, without notice from the seller that he had no information as to the quality. Quite likely the rule ought to be, and quite likely the rule is, that the law implies a warranty as to quality or as to defects not obvious, if the owner sells an article of merchandise at the market price, knowing it is to be used for a particular purpose, without any disclaimer as to his knowledge, opportunities of inspection, and information in respect to the same, and under circumstances where the buyer might fairly rely upon the seller's supposed superior knowledge, judgment, or skill. or where the seller disposes of goods manufactured by himself, or in which he deals, for the market value, and concerning which he had opportunities of inspection that the buyer did not have; but that question we need not pass upon, and we only refer to a supposed situation for the purpose of distinguish-

ing the case under consideration. Suppose it were a piece of manufactured shafting that both parties were looking at,—an article manufactured for a certain purpose, and in respect to which they were talking about a sound price,—and the seller says: "I have no knowledge as to the soundness of the article in respect to latent defects. I did not see the steel or iron in the rough or while in the process of manufacture. I bought it yesterday, and the man told me it was all right." Would the law, under such circumstances, imply a warranty against latent defects? Is not the doctrine of implied warranty against latent defects in manufactured articles based altogether upon the idea of the superior opportunities of the manufacturer to discover defects in the process of manufacture, and the supposed superior opportunities and information of the dealer? Of course, if it should turn out that, although the piece of shafting was recently purchased, and although the seller had had nothing to do with the manufacture, that he, in fact, had knowledge or information, and had deceived, the law would afford redress in tort, but not in contract upon implied warranty.

The cases most relied upon as in favor of an implied warranty and a recovery are Jones v. Just, L. R. 3 Q. B. 197, and Murchie v. Cornell, 155 Mass. 60, 29 N. E. 207. We cannot look upon Jones v. Just as in point upon the question before us. On the contrary, it differentiates itself from the case under consideration in this respect: That there was no disclaimer of knowledge as to quality or opportunity of inspection by the seller or its agents, and, moreover, the defect against which the implied warranty was held to exist was not a defect in quality existing in the original article or packing, but one created in transit by shipwreck, and wetting with salt water, on a voyage from Manilla to Singapore, and repacking at that point.

We do not understand that the civil law maxim caveat venditor, which is based upon the idea that a sound or full price raises a warranty that the goods are sound, has been fully adopted in common-law jurisdictions, although the harsh caveat emptor rule has been qualified somewhat, so that the warranty of the vendor as to quality exists where he sells property about which he assumes to have knowledge, or about which he alone has the means of knowledge, or under such circumstances as it is the policy of the law to charge him with knowledge; and, as said in Bridge Co. v. Hamilton, 110 U. S. 108, 116, 3 Sup. Ct. 537, 542, 28 L. Ed. 86, 89: "According to the principles of decided cases, and upon clear grounds of justice, the fundamental inquiry must always be whether, under the circumstances of the particular case, the buyer had the right to rely and necessarily relied on the judgment of the seller, and not upon his own." In the same case Mr. Justice Harlan, in commenting upon Parkinson v. Lee, 2 East, 314, refers (at page 113, 110 U. S., page 540, 3 Sup. Ct., and page 88, 28 L. Ed.) to the observation of Chief Justice Tindal in Shepherd v. Pybus, 3 Man. & G. 868, that two of the judges participating in its decision laid "great stress upon the fact that the seller was not the grower of the hops, and that the purchaser, by the inspection of the hops, had as full an

opportunity of judgment of the quality of the hops as the seller himself," and observes: "There was, consequently, nothing in the circumstances to justify the buyer in relying on the judgment of the seller as to the quality of the commodity." Mr. Justice Harlan also quotes approvingly (at least without adverse criticism) the rule given by Tindal, C. J., in Brown v. Edgington, 2 Man. & G. 279:

"It appears to me to be a distinction well founded, both in reason and on authority, that if a party purchases an article upon his own judgment he cannot afterwards hold the vendor responsible, on the ground that the article turns out to be unfit for the purpose for which it was required; but if he relies upon the judgment of the seller, and informs him of the use to which the article is to be applied, it seems to me the transaction carries with it an implied warranty that the thing furnished shall be fit and proper for the purpose for which it was designed."

In Jones v. Just it is said: "The buyer trusts the manufacturer or dealer, and relies upon his judgment, and not upon his own." This, we think, states correctly the general rule and the true principle of an implied warranty. It exists where the sale is under such circumstances as entitle the buyer to rely upon the skill and experience of the manufacturer, if the article is to be manufactured, or, if the goods are in existence, upon the knowledge and opportunity of inspection which the seller or dealer possesses, and which the buyer does not possess. But this rule is not broad enough to include a sale where both parties manifestly have the same knowledge and opportunities of inspection, and where the seller expressly states the situation to the buyer. It cannot be said that the buyer has a right to rely on knowledge or skill or opportunity of inspection which the dealer expressly informs him he does not possess.

In Murchie v. Cornell, 155 Mass. 60, 62, 29 N. E. 207, Mr. Justice Holmes, in delivering the opinion of the court, said there was some evidence to show that the ice was not identified by the contract, and some to show that it was so identified, and that, under those circumstances, the trial justice had charged the jury that no warranty of quality existed. He continued: "If the instruction is wrong in either view which the jury might have taken of the facts, the exceptions must be sustained." The court thereupon held the instruction erroneous, as it undoubtedly was; for, if the ice was not identified by the contract, a warranty was plainly implied. The case decides nothing concerning a sale of specific ice like the sale here before us.

So it would seem that neither the English court in Jones v. Just, nor the Massachusetts court in the case last cited, had occasion to deal with a situation which involved the element of disclaimer and lack of knowledge and opportunity of inspection by the seller which is presented by the case in hand, and which we think clearly excludes the idea of an implied warranty. The judgment of the circuit court is reversed, the verdict is set aside, the case is remanded to that court for further proceedings, and the plaintiff in error recovers her costs in this court.